Territory, respondent, *v.* Carson et al., appellants.

*Liability of sureties on an official bond.* — Under sections 932, 936, 938, and 939, division 5, Compiled Statutes of Montana, *held,* that the indictment and conviction of a county officer, for a failure to turn over money found to be due the county, are not conditions precedent to render the sureties on his bond liable.

*Laws at the date of its execution form a part of the contract of sureties on an official bond.* — In the case at bar, a probate judge executed and filed a bond, signed by himself, with sureties, for the faithful discharge of the duties of his office. *Held,* that bonds of such a character will be presumed to have been executed in contemplation of the law as it exists in relation to the duties of the principals at the time of their execution, and that such laws enter into and form a part of the contracts of such bonds.

*State of facts rendering an officer and the sureties on his bond liable to a county.* — In the case at bar, a probate judge entered upon the duties of his office under the "salary law" (c. 52, div. 5, Comp. Stats. Mont.) of March 5, 1885, allowing him a fixed salary for his services, and requiring him to turn over to the county all fees.  At the beginning of his term, among his official duties was that of examining and punching the skins of wild animals killed, and issuing certificates under the bounty law then in force (sec. 1159, div. 5, Comp. Stats. Mont.).  While he was still in office, another act was passed concerning bounties (sec. 1159, div. 5, Comp. Stats. Mont.), adding other wild animals to the list of those for the killing of which bounties were offered, and prescribing that the probate judge should also destroy the skins of such additional animals when presented to him.  This latter law also prescribed the fees for the duties of probate judges in reference to such animals added to the bounty list.  The probate judge, in this action, collected certain fees under the new law, and refused to turn them over, on the ground that he was entitled to them in addition to his salary.  Suit was brought for the money so withheld, on his official bond.  His sureties disclaimed liability on the ground that the legislature had imposed duties upon their principal different in kind from his duties at the date of the execution of the bond, and not naturally belonging or pertinent to his office.  *Held*, that the subsequent statute did not change the nature of the duties of the probate judge in kind, but only in degree, and that both the principal and his sureties were liable.

## Appeal from District Court, Gallatin County.

ARMSTRONG & HARTMAN, and HENRY N. BLAKE, for the appellants.

The doctrine of *United States* v. *Singer*, 15 Wall. 111, governs.  Mr. Justice Field says: " The official bond of parties undoubtedly covers, not merely duties imposed by existing law, but duties belonging to and naturally connected with their office or business imposed by subsequent law.  But the new duties should have some relation to or connection with such office or business, and not be disconnected from and foreign to both."  Page 112.  "An office is a public station or employment, conferred by the appointment of government. . The term embraces the ideas of tenure, duration, emolument, and duties."  *United States* v. *Hartwell*, 6 Wall. 393; *United States* v. *Germaine*, 99 U. S. 511.  Under the statutes of the United States and states which prohibit the payment

of extra or additional compensation to officers receiving
salaries, and are as comprehensive as the act of Montana
of 1885, it has been held that they relate to the duties
properly pertaining to the nature of the office, and not
to other and independent matters which may be devolved
thereon by legislation. For services performed that are
foreign to the business of the office, the incumbent has
been allowed extra compensation, although the statute
prescribed a salary for his official acts. *Converse* v.
*United States,* 21 How. 463; *United States* v. *Brindle,* 110
U. S. 688; *United States* v. *Hill,* 120 U. S. 169; *United
States* v. *Macdaniel,* 7 Pet. 1; *United States* v. *Ripley,* 7
Pet. 18; *United States* v. *Fillebrown,* 7 Pet. 28; *United
States* v. *Cheeseman,* 3 Saw. 424, 429, 431; *Crosman* v.
*Nightingill,* 1 Nev. 323, 326; *People* v. *Edwards,* 9 Cal.
286, 292; *Love* v. *Baehr,* 47 Cal. 364, 368; *Melone* v. *State,*
51 Cal. 549; *Green* v. *State,* 51 Cal. 577; *Dennis* v. *State,*
60 Miss. 949, 952; *Commonwealth* v. *Holmes,* 25 Gratt.
771; *Evans* v. *Trenton,* 24 N. J. L. 764, 769; *Roman* v.
*Peters,* 3 Rob. (La.) 479; *Governor* v. *Ridgway,* 12 Ill. 14,
19. The common law of England is to the same effect.
*Pybus* v. *Gibb,* 88 Eng. Com. L. 902; *Detroit* v. *Redfield,*
19 Mich. 376; *Compher* v. *People,* 12 Ill. 290, 295; *People
Tompkins,* 74 Ill. 482; *People* v. *Vilas,* 36 N. Y. 459, 463,
467; *Burroughs* v. *Norton County,* 29 Kan. 196.

Section 9 of the Organic Act of Montana vests the ju-
dicial power of the territory in probate and other courts,
and regulates their jurisdiction. This court knows,
judicially, the duties which usually belong to the office
of a probate judge, and that the counting and destruc-
tion of the skins of ground-squirrels and prairie-dogs
are foreign thereto. This action is brought under the
act of 1885. In ordinary cases, the action must be
maintained in the name of the board of commissioners
of the county. Sec. 339, div. 5, Rev. Stats. The salary
act is a penal statute, and must be construed strictly

against respondent. *Cleaveland* v. *Norton*, 6 Cush. 380, 383; Bishop on Statutory Crimes, 2d ed., sec. 194; *Chase* v. *New York Cent. R. R. Co.*, 26 N. Y. 523, 525; *Tiplett* v. *Munter*, 50 Cal. 644; *Smith* v. *Ling*, 68 Cal. 325. The complaint should allege that the probate judge, Carson, has been convicted of violating the act of 1885. This must be done before the sureties can be sued on his bond. The term " also," in the clause defining the liability of the sureties, " implies some connection or agreement between the words it unites." Whately; Webster's Dict., word Also. The statute renders the sureties liable for the penalty which must be inflicted after conviction. Therefore the complaint does not state facts sufficient to constitute a cause of action. See cases *supra; Chollar M. Co.* v. *Willson*, 66 Cal. 374, 376; *Pulaski County* v. *Stuart*, 28 Gratt. 872. The probate judge was certainly entitled to a reasonable compensation for work necessarily done in destroying the skins of prairie-dogs and squirrels, and services outside of office hours, under the bounty law. See cases *supra; United States* v. *Flanders*, 112 U. S. 88.

  W. E. CULLEN, Attorney-General, and FRANK HENRY, County Attorney, for Respondent.

The answer fails to deny any material allegation of the complaint, and the plaintiff is entitled to judgment upon the pleadings. *Power* v. *Gum*, 6 Mont. 5; *Doll* v. *Good*, 38 Cal. 287. If the complaint is sufficient, judgment may be rendered on the pleadings when the answer fails to deny its allegations or to set up new matter in avoidance. *Felch* v. *Beaudry*, 40 Cal. 439. The language of the salary act (14th Sess. Laws, p. 62) is broad enough to cover all fees received under the bounty law by Carson. The bounty law was in existence at the passage of the salary act. 13th Sess. Laws, p. 109. The amendatory act of March 5, 1887, amends but one sec-

tion, by adding two animals to those therein mentioned. The duties and compensation of all public officers not constitutional are wholly under the control of the legislature. *People* v. *Van Gaskin,* 5 Mont. 366; *Durow* v. *Hobart,* 10 Nev. 28; *People* v. *Whitlock,* 92 N. Y. 191; *Attorney-General* v. *Squires,* 14 Cal. 16; *Long* v. *Mayor,* 81 N. Y. 425. The duties of public officers may be added to by the legislature without any addition to their compensation. *Turpen* v. *Commissioners,* 7 Ind. 172; *Haynes* v. *State,* 3 Humph. 480; *S. P. Miama* v. *Blake,* 21 Ind. 32; *People* v. *Devlin,* 33 N. Y. 269; *Palmer* v. *New York,* 2 Sand. 318; *San Luis County* v. *King,* 69 Cal. 531; *Smith* v. *Dunn,* 68 Cal. 54; *Redwood City* v. *Grimmenstein,* 68 Cal. 515; see also *Raymond* v. *County Commissioners,* 5 Mont. 107.

GALBRAITH, J. This is an appeal from a judgment rendered against the appellant Charles A. Carson, probate judge of Gallatin County, and the other defendants, who were the sureties upon his official bond, for certain money alleged to have been received by him in his official capacity, and unlawfully withheld by him from the county. This judgment was rendered in consequence of an order sustaining respondent's two motions for judgment on the pleadings; the one being for judgment against the appellant Carson, and the other for judgment against the sureties.

It is claimed that the complaint does not state facts sufficient to constitute a cause of action against the sureties on the bond, for the reason that the suit being brought under what is termed the "salary law" of 1885 (div. 5, Comp. Stats., p. 891), and being entitled in the name of the territory of Montana for the use of the county of Gallatin, as that act provides, it should contain an allegation that the defendant Carson had been convicted of a violation of the provisions of this

law before an action will lie against the sureties upon his official bond. Ordinary actions by or against counties should be in the name of the board of county commissioners. Sec. 748, div. 5, Comp. Stats. But although this action is brought under the salary law, we do not think that this statute bears this construction. That portion of this statute which it is claimed supports this position of the appellants is as follows: " He [referring to the officer named in the statute] shall, upon conviction upon indictment in the district court of the proper county, be adjudged guilty of misconduct in office, and be immediately removed therefrom, and in addition, forfeit all compensation to which he would otherwise be entitled, and be compelled to pay a fine for the use of the county of not less than five hundred dollars, nor more than two thousand dollars, for the payment of which forfeiture and fine, as well as any amount otherwise due from him in his official capacity, his sureties shall also be liable upon their bond, to be recovered in a civil action in the name of the territory of Montana, for the use of the county in which he was an officer." Sec. 938, div. 5, Comp. Stats. Section 932 of this act provides for the making of quarterly reports, under oath, to the county commissioners by the officers mentioned therein, for all fees, etc., receivable for any services rendered by them in their offices during the preceding quarter. Section 936 provides for the payment into the county treasuries at the end of each quarter, by each of these officers, of all fees collected by them during such preceding quarter. Section 938 mentions this money as being due upon the settlement which the act evidently contemplates shall be made at the end of each quarter. Section 939 provides that the official bond of any of the officers named in the act shall be liable for any violation by him of any of the provisions of the act, and for his faithful performance of all the duties by it required. Among these

duties is the payment by the officer of all moneys due from him upon settlement with the county commissioners into the county treasury. Taking into consideration the tenor of the whole act, it is evident that the phrase " as well as," taken in connection with the term " also," means that, in addition to the liabilities of the sureties upon the bond for any money found to be due upon settlement with the county commissioners, under the act, they shall also be liable for the forfeiture and fine to which the officer shall be subjected upon conviction for any of the causes mentioned in this section. But indictment and conviction are not conditions precedent to render the sureties liable on the bond of the officer for money found to be due to the county upon the quarterly settlement with the commissioners.

Our next inquiry will be directed as to whether or not the facts contained in the pleadings warrant the judgment of the court rendered upon the motions for judgment therein; and the first question here presented is in relation to the liability of the sureties upon the official bond. The appellant Carson entered upon the duties of his office as probate judge of Gallatin County, on the twentieth day of December, 1886, and his official bond was approved and filed on the fourteenth day of December, 1886. This action was instituted under what is generally known as the " salary law," to recover from the appellant Carson, and the sureties upon the foregoing bond, a certain sum found by the county commissioners to be due from him, on settlement for certain money which was collected and received by him as probate judge, for official services rendered by him between the twentieth day of December, 1886, and the first day of September, 1887. This salary law provides for a salary to be paid yearly to the probate judge of Gallatin County, and provides also that " it is the true intent of this act to limit the maximum annual compensation

from every source" to be paid to the said probate judge "to the sum named therein," viz., eighteen hundred dollars. The defense is substantially that the appellant Carson received the above sum under the act of the legislative assembly approved March 5, 1887, in relation to bounties for killing certain animals, in payment for his services and expenses in the premises. There are other matters set forth by way of defense, but they relate to and depend upon the determination of this question, which involves a construction of the salary law above referred to, and the foregoing statute in relation to bounties upon certain animals, and a previous statute upon the same subject, which was amended thereby. This last-named statute and the salary law were laws existing and in force at the time of the execution of the bond, and when the appellant Carson entered upon the duties of his office as probate judge. The former related to bounties upon bears, mountain-lions, wolves, and coyotes which should thereafter be killed, or be caused to be killed, in the territory of Montana, and making it the duty of the probate judges or the justices of the peace, in the county where such animals were killed, to issue certificates for such bounty to any one so killing any of said animals, and exhibiting to him the skin thereof, after performing certain acts in relation thereto for the prevention of fraud. The amendment to this law, which was enacted while the appellant Carson was the incumbent of the office of probate judge of said county, and under the provisions of which he claims the money sued for in this action, extended the list of the animals for the killing of which a bounty was to be paid to include prairie-dogs and ground-squirrels, and providing, among other things, for the destruction of the skins of the last-named animals after being presented to him by the justice of the peace or the probate judge.

Bonds of the character of the one at bar will be pre-

sumed to have been executed in contemplation of the law in relation to the duties and obligations of the principal as it existed at the time of its execution. The bond in suit, therefore, will be presumed to have been executed in view of both the salary law and the statute in relation to bounties for the killing of certain animals, which existed at the time it was executed. These laws entered into and formed a part of the contract. If there had been no law existing at the time of the execution of the bond, in relation to these bounties, then the principle invoked by the appellants, that a subsequent law which imposed duties different in kind from any required to be performed by the probate judge by any existing law, and not naturally belonging or pertinent thereto, would control. In that case, the position of the appellants, that the condition of the bond, which provides, in substance, that the appellant Carson will execute and perform all the duties of the office of probate judge required by subsequent statutes, does not enlarge the liabilities of the sureties upon the bond, would be correct.

This would be the legal effect of that condition contained in the bond, "to perform all the official duties now required of him by law." But at the time the bond was executed, the statute in relation to bounties for killing certain animals, approved March 3, 1883, was in existence, and, as before stated, will be presumed to have entered into the contemplation of the sureties at the time of the execution of the bond. The subsequent statute, amending the foregoing, did not change the nature of the duties of the probate judge in relation to the animals killed in kind, but only in degree. It simply increased the number on the list of animals for the killing of which a bounty was to be paid, and modified his duties in relation to the disposition of the skins. Both these laws related to the same subject-matter, viz., the

bestowment of bounties for the killing of certain animals, and the duties of the probate judge and the justice of the peace in relation thereto. The performance of these duties may well be said to constitute their business under the law. When a subsequent statute simply affects the duties to be performed by a public officer, not as to the kind of duties, but in their degree, no matter to what extent, the sureties upon his bond, so far as this question is concerned, will be held liable. The duties under the new law in relation to bounties had a relation to and were connected with the business to be performed by the probate judge under the old law which it amended. Mr. Justice Field, in *United States* v. *Singer,* 15 Wall. 111, enunciates the general, and for us the controlling, doctrine upon this subject as follows: " The official bond of parties undoubtedly covers, not merely duties imposed by existing laws, but duties belonging to and naturally connected with their office or business. imposed by subsequent laws. But the new duties should have some relation to or connection with such office or business, and not be disconnected from and foreign to both."                                                          •

A bond given by an officer before a law is enacted imposing duties different, not in kind, but in degree, from those before pertaining to the office may be fairly held to be a security for such additional duties. " The distinction is between an increase by the legislature of the duties of an office of the same nature or like kind as those before pertaining to it after the execution of the bond, and the addition of new duties, not of the same nature or kind with those before belonging to it. . . . . Every official bond is executed with a knowledge of the right and the practice of the legislature to enlarge the duties of the officer." Campbell, C. J., in *Denio* v. *State,* 60 Miss. 949. This doctrine is substantially maintained by the following authorities: *Evans* v. *City of Trenton,* 24

N. J. L. 764; *Commonwealth* v. *Holmes,* 25 Gratt. 771; *Turpen* v. *Board of Com'rs,* 7 Ind. 172.

In *Evans* v. *City of Trenton, supra,* Potts, J., uses the following language, applicable to the case at bar: " It is a well-settled rule that a person accepting a public office with a fixed salary is bound to perform the duties of the office. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate compensation for the services. Nor does it alter the case that, by subsequent statutes or ordinances, his duties are increased, and not his salary. His undertaking is to perform the duties of his office, whatever they may be, from time to time, during his continuance in office, for the compensation stipulated, whether those duties are diminished or increased. Whenever he considers the compensation inadequate, he is at liberty to resign. *Andrews* v. *United States,* 2 Story, 202; *People* v. *Supervisors,* 1 Hill, 362; *Bussier* v. *Pray,* 7 Serg. & R. 447; Angell and Ames on Corporations, sec. 317. This rule is of importance to the public. The successful effort to obtain office is not unfrequently speedily followed by efforts to increase its emoluments, while the incessant changes which the progressive spirit of the times is introducing effects, almost every year, changes in the character and additions to the amount of duty in almost every official station; and to allow these changes and additions to lay the foundation of claims for extra services would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of the legislature, and the ordinances of our municipal corporations, seldom prescribe with much detail and particularity the duties annexed to the public offices; and it requires but little ingenuity to raise nice distinctions between what duties may and what may not be strictly official; and if these distinctions are much favored by courts of justice, it may lead to great abuse."

It is the general rule of law that it is competent for the legislature to increase or decrease the duties incumbent upon public officers, and to increase and diminish their compensation, in so far as it is not prohibited by the fundamental law. *People* v. *Van Gaskin,* 5 Mont. 352; *Denver* v. *Hobart,* 10 Nev. 28; *People* v. *Whitlock,* 92 N. Y. 191; *Long* v. *Mayor,* 81 N. Y. 425; *Haynes* v. *State,* 3 Humph. 480.

We are of the opinion, therefore, that the statute of March 5, 1887, under which the appellant Carson, by reason of his being the incumbent of the office of probate judge of Gallatin County, claims the right to withhold the sum demanded in the complaint, and which was an amendment to the bounty law of 1883, the duties prescribed by which he was required to perform, did not enlarge the duties of the probate judge in kind, but only in degree; and under the foregoing principles of law, he is liable therefor, as well as the sureties upon the bond.    This disposes of the questions relied upon by the appellants.    The motions for judgment on the pleadings against both the appellant Carson and the sureties on his official bond were properly sustained.

The judgment is affirmed, with costs.

*Judgment affirmed.*

McCONNELL, C. J., and BACH, J., concur.