STATE EX REL. KAISER WATER CO., RESPONDENT, *v.* CITY OF PHILIPSBURG ET AL., APPELLANTS.

[No. 1264.]

[Submitted May 8. 1899. Decided June 5, 1899.]

*Water Company— Contract with City—Municipal Corporations—Mandamus—Adequate Remedy at Law.*

1. Under a contract by a city with a water company by which the latter has to furnish and keep in working order 15 fire hydrants for a period of 10 years at a rental of $112 per annum, the city to have the right at any time within 10 years "to take any additional number of fire hydrants at the annual rental of one hundred dollars each," the city ordering additional hydrants, is liable for their rent for the remainder of the period of ten years, and not merely until the order is rescinded.
2. Mandamus will lie to compel a city to audit and pay a bill which it owes to a water company for hydrant rent, although Political Code, Section 4703, provides that cities may sue or be sued in all courts and places.

*Appeal from District Court, Granite County; Theo. Brantly, Judge.*

APPLICATION for mandamus on the relation of the M. & J. Kaiser Water Company against the City of Philipsburg and others. Judgment for plaintiff against defendant City of Philipsburg, and it appeals. Affirmed.

STATEMENT OF THE CASE.

Appeal from a judgment awarding to the plaintiff (respondent here) a writ of mandate requiring the defendant (appellant here) to audit, allow, approve, and pay the bills of the plaintiff water company for water furnished the city of Philipsburg at the rate of $112.50 per annum for each of fifteen hydrants, and at the rate of $100 per annum for each of four more, during the life of the water company's franchise.

The petition for the writ of mandate avers the corporate capacity of the plaintiff water company, the municipal incorporation of the defendant, the City of Philipsburg, and that the other defendants are, respectively, the mayor, aldermen,

and clerk of said city. It is then averred that on January 5, 1893, a franchise was granted by ordinance to Michael and John Kaiser to lay pipes through the streets of Philipsburg, and to supply the city and its inhabitants, through them, with water for a period of ten years; that at the same time another ordinance was passed, in the nature of a contract for the supplying of the city with water, which provided as follows:

''Now, therefore, in consideration of the said franchise, and of the completion and maintenance of the said water system according to contract, and for the further consideration of one hundred twelve and one-half dollars ($112.50) per annum per hydrant, the said Town of Philipsburg hereby contracts with the said Michael Kaiser and John Kaiser, their successors and assigns, for the use of fifteen nonfreezing, double-discharge fire hydrants, to be supplied to said town for the period of ten years from the time in the year 1893 that said water system is completed and said hydrants ready for use. Said hydrants to be always kept in working order by said Michael and John Kaiser, their successors and assigns, and to be always charged with water in quantity and pressure according to contract of said Michael and John Kaiser with said town. Said Town of Philipsburg to have the right at any time during said period of ten years to take any additional number of fire hydrants at the annual rental of one hundred dollars each. Said fire hydrants to be placed throughout the town of Philipsburg as directed by the board of aldermen, and not to be used for any purpose whatever except by the authorities of the town of Philipsburg.''

It is then averred that the M. & J. Kaiser Water Company succeeded to the franchise and other rights of Michael and John Kaiser, and that the City of Philipsburg is the successor of the Town of Philipsburg; that under the said ordinance the petitioner's plant was installed and operated with fifteen hydrants until August 1, 1895, when the city required the water company to put in four more hydrants, as provided for in the ordinance, which the petitioner did at a cost of about $1,000; that the city paid the petitioner all its bills presented

monthly thereafter, as provided for in the ordinance, until the
presentation of the bill of October, 1897, which the city re-
fused to pay so far as it included amounts charged for the
new hydrants, notice having been theretofore served by the
city upon the water company that on and after October 1,
1897, it would discontinue the use and hiring of the four
additional hydrants; that the hydrants are valueless except to
the City of Philipsburg; and that the water system is kept
supplied, and the additional hydrants are always ready for
use.

The city interposed a general demurrer to the petitioner's
application.    A special demurrer was interposed by the indi-
vidual defendants.    The special demurrer was sustained, but
the general demurrer was overruled.    The City of Philips-
burg elected to stand on its demurrer.    Judgment was there-
after entered in favor of the petitioner and against the city.
From this judgment the appeal is taken.

*Messrs. Durfee & Brown*, for Appellants.

The alleged rights of the respondent under this contract
were not so supreme, or so jeopardized as to alter the rela-
tionship of ordinary creditor and debtor, an action at law is
its proper and appropriate remedy in this case, and all of its
alleged rights could be safely and adequately protected in
such action; and to seek by the arbitrary and summary
method invoked by it in this cause to collect an alleged debt
is contrary to law, equity, reason or practice.

Section 4703 of the Political Code grants the respondent a
plain, speedy and adequate remedy, and having this, is by its
very terms denied the privilege of the writ of mandamus.

In the case of *Crandell* v. *Amador County*, reported in 20
Cal., p. 75, that court adopts the language of Mr. Justice
Harris in the case of the *People* v. *Thompson*, reported in 25
Barb., p. 73, as follows:    "The invariable test by which the
right of a party applying for a mandamus is determined, is to
enquire, *first*, whether he has a clear, legal right, and if he
has, then, *secondly*, whether there is any adequate remedy to

which he can resort to enforce his right; if there is, he cannot have a mandamus. The writ only belongs to such as have legal rights to enforce, and find themselves without an appropriate legal remedy. To prevent a failure of justice, and only for this, the court will avail itself of this extraordinary power.'' That such has been the one and uniform ruling of the courts, see: *Price* v. *City of Sacramento*, 6 Cal., 255; *Tilden* v. *Sacramento Co.*, 41 Cal., 68; *Lewis* v. *Barclay*, 35 Cal., 213; *Jacobs* v. *Board of Supervisors City and County of San Francisco*, 100 Cal., 121; Dillon on Municipal Corporations, Sec. 97; 17 Pac. Rep., 135. Counsel for respondent seem to rely wholly for a decision in this case on that rendered by this Court in *State ex rel. Great Falls Water Works* v. *City of Great Falls*, 19 Mont., 518; 49 Pac., 15. We claim, however, that the cause at bar and the Great Falls case are in no sense analogous,—both the conduct of the cause and the confessed facts differ materially in this. The law as stated in *Price* v. *City of Sacramento*, and followed by the authorities heretofore cited, in our opinion, is the correct and most reasonable rule.

*Mr. T. J. Walsh*, for Respondent.

MR. JUSTICE HUNT, after stating the case, delivered the opinion of the court.

1. The City of Philipsburg refuses to pay the bill of the water company for the four additional hydrants it ordered the water company to put in, upon the ground that, under the clause of the contract ordinance which is quoted in the statement of the case, when the city ordered additional hydrants it entered into a *yearly* lease with the water company to hire such additional hydrants, and that, having an option to take the additional hydrants, it also had the option to stop the hiring at the end of a year, at the election of the city. Relying upon this construction of the contract, the city seeks to maintain the position that it elected to terminate its lease of the four additional hydrants it had ordered, and to discon-

tinue the use of them, at the end of the second year's lease, after paying in full for the same. But in our opinion the agreement cannot receive that construction. Following the familiar principle that courts will not make an agreement for persons, but will get at what their agreement is, we will look to the written words voluntarily employed by these parties, and to the effect of their language. We will also look at the whole of the ordinance constituting the contract, giving to every clause, and, if needs be, to every word thereof, a meaning,—all with a purpose to so construe the contract as to make effectual the objects and intentions of the parties.

It is perfectly plain that for the fifteen hydrants first mentioned in the contract the city was to pay for ten years from the time in the year 1893 that the water system was completed and the fifteen hydrants were ready for use. As to this there is no room for argument. The then present needs of the city, and the apparent certain future needs thereof, justified the agreement whereby fifteen hydrants should be taken, and kept supplied and ready for use for 10 years, at an annual rental of $112.50 per annum per hydrant. Doubtless a possible decrease of the city's population, followed by requirements for less fire protection, was not considered of sufficient likelihood for the city to reserve to itself in the contract a right to discontinue the use of less than fifteen hydrants for the fixed period of ten years. But, whatever may have moved the parties in respect to the fifteen hydrants, they made express provision for increased needs, if they should occur, by that clause of the contract which gave to the city the right at any time during the period of ten years for which the fifteen hydrants were taken to take any additional number of hydrants at an annual rental of $100 each. Acting upon this clause of the agreement, and presumably to meet the necessities of the municipality, the city took the four additional hydrants, requiring the water company to put them in, which it did at an expense of $1,000. As we interpret the agreement, the city had no right to order and take these additional hydrants upon any other basis than that upon which

it took the first fifteen hydrants, except in so far as it was expressly otherwise provided for in the ordinance itself. The stipulated annual rental of $100 for each additional hydrant, which was $12.50 less than for the first fifteen, is a circumstance tending to show that the meaning of the parties 'was that additional hydrants, if taken, would be kept in use for a substantial period of time, which we construe to mean for as many years after the taking as there might be left to run under the ten-year period fixed for taking the fifteen hydrants. It is reasonable to believe that some period of time was in the minds of the contracting parties, during which the city would be obliged to pay for the additional hydrants; but we find nothing in the language used to warrant the construction that the period contemplated was one year only, or the lease a yearly one, subject to termination at the end of that time.

As we construe the contract, too, the obligation rested upon the water company to keep these additional hydrants supplied, and always in working order, charged with water in quantity and pressure according to the contract with the town made by the water company's predecessors, just as fully as it developed upon it to keep the fifteen hydrants charged and ready. In other words, we are satisfied that the obligations of the contract imposed upon the water company in respect to the fifteen hydrants for ten years rested upon the company equally, as relates to all additional hydrants for the years they had to be supplied, while, on the other hand, the correlative duty lay upon the city to pay for the additional hydrants in the same manner and from the time they were taken until the lapse of the same period provided for in relation to the fifteen hydrants. This construction insures for the city a water supply to meet its growth, and avoids the very unreasonable view that either party can refuse to perform or revoke without just cause.

As we regard it, the clause pertaining to additional hydrants, and stipulating for an annual rental therefor, was inserted, not to abbreviate the period of the contract's duration, which is ten years from the date that the fifteen hydrants were ready

for use, and is for as many years' use of the additional
hydrants as there may be between the date of their taking and
the time that the ten years will expire since the taking of the
fifteen hydrants, but was to secure to the city an adequate
water supply to meet its possible future necessities, and to
make certain that such supply would be furnished at a reason-
able and fixed price per hydrant.    The particular obligations
resting upon the parties in case additional hydrants should be
taken, though not set forth in express terms, must be ascer-
tained by reference to that part of the provision of the con-
tract governing the fifteen hydrants.    We have therefore
read all the provisions together, and concluded that the ten-
year clause and those parts of the provision which require the
supply to be furnished under certain pressure, and to be kept
in working order, cannot be disassociated from the clause
authorizing additional hydrants, but is to be construed with it.

2.    The next contention of the city is that the water com-
pany having a plain, speedy, and adequate remedy at law,
under Section 4703 of the Political Code, *mandamus* will not
lie.    Section 4703 provides, in part, that every city organized
under Title III of the Political Code, relating to cities and
towns, may sue and be sued in all courts and places, and in
all proceedings whatever, and has such other powers as are
incident to municipal corporations, not inconsistent with the
laws of the United States or of the state. The rule estab-
lished by Section 4703 was in force, however, at the time of
the decision of this Court in *State ex rel. Great Falls Water
Works* v. *Mayor of Great Falls et al.*, 19 Mont., 518; 49 Pac.
15.    In that case the court was obliged to pass directly upon
the question whether or not *mandamus* will lie to compel a
city to perform a duty imposed upon it by law,—to audit and
allow proper bills it owes under the terms of a contract for a
water supply, and to issue its warrant for the payment of the
bills.    It was held *mandamus* was a proper remedy.    We
cannot distinguish this case from that.    It is true, as appears
by the record, no demurrer was interposed in the Great Falls
case; but the question of the sufficiency of the petition was

raised by an objection to the introduction of any evidence on the ground that no cause of action for a writ of *mandamus* was pleaded. We will not depart from the rule there announced, in this case, where the facts are so very similar. This disposes of the only questions relied on in argument and brief.

Judgment affirmed. Remittitur forthwith.

*Affirmed.*

MR. JUSTICE PIGOTT: I concur with Mr. Justice Hunt in his interpretation of the contract, and in the conclusion stated in the first paragraph of the foregoing opinion.

In holding that *mandamus* is a proper remedy, the second paragraph of the opinion follows *State ex rel. Great Falls Water Works* v. *Mayor of Great Falls et al.*, 19 Mont. 518, 49 Pac. 15. I doubt the correctness of that decision in the respect mentioned, but "*stare decisis et non quieta movere.*"

MR. CHIEF JUSTICE BRANTLY, being disqualified, took no part in this decision.

