PETERSON, RESPONDENT, v. CITY OF BUTTE, APPELLANT.

(No. 3,093.)

(Submitted December 18, 1911.   Decided January 4, 1912.)

[120 Pac. 483.]

*Municipal Corporations—Police Department—Officers—Wrongful Removal — Mandamus — Compensation—Action to Recover—Estoppel.*

Public Officers—Compensation—When Entitled to.
    1.  A public officer claiming compensation for the performance of duties appertaining to his office must show that such compensation is allowed by law.

Police Officers—Wrongful Removal—Compensation for Service.
    2.  *Held,* that a police officer who, after his appointment under the Metropolitan Police Law, had been unlawfully removed by the mayor but held himself in readiness to resume the discharge of his duties and promptly instituted and prosecuted to judgment proceedings for his reinstatement, was entitled to the compensation attached to the office for the period intervening between his removal and reinstatement though not in active service during that time, it not appearing that the amount claimed by him had been paid to another serving in his place during the ouster.

Same—Compensation—"Serving."
    3.  A city ordinance fixed the compensation of the members of the police department "serving as patrolmen" at a certain amount per annum.  *Held,* that the phrase "serving as patrolmen" was intended as the equivalent of the term "for services as patrolmen," and not as a provision requiring actual service as a prerequisite to compensation.

Same—Wrongful Ouster—Restoration—Compensation.
    4.  Before a police officer, who claimed to have been unlawfully ousted from office, could maintain an action for his compensation for the time he was so ousted, it was incumbent upon him to secure a judicial determination that the ouster was wrongful, and a restoration to office.

Same — Wrongful Removal — *Mandamus* — Action for Compensation — Estoppel.
    5.  Where a police officer was wrongfully removed by the mayor, and successfully prosecuted *mandamus* to compel his reinstatement, the fact that he made no effort in such proceeding to recover his salary for the time intervening between his removal and reinstatement did not operate as an estoppel to his maintaining a subsequent action to recover such compensation.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Gus F. Peterson against the City of Butte.  Judgment for plaintiff, and defendant appeals from it and an order denying it a new trial.   Affirmed.

*Mr. H. Lowndes Maury, Mr. John A. Smith,* and *Mr. N. A. Rotering,* for Appellant, submitted a brief; *Mr. Maury* argued the cause orally.

In a consideration of this case, we earnestly request the court to bear in mind that an office is not synonymous with a salary for an office, though in the popular mind the two things are frequently considered as only one; and in this connection we request the court to remember that another popular notion is a fallacy, to-wit, that the salary is the principal; the office and tenure thereof the incident.

· Whenever any public officer in a court of law puts forth a claim for money compensation for holding or serving in office against the nation, the state, a county or a city, the first presumption of the common law is that no compensation is allowed; that he served the public for the satisfaction of having done his duty. (*McGillic* v. *Corby,* 37 Mont. 249, 95 Pac. 1063, 17 L. R. A., n. s., 1263; 37 Century Digest, col. 1939, and cases there cited.) The recent decisions on this question have been collated and analyzed in a lengthy note to *Bohart* v. *Anderson,* 24 Okl. 82, 103 Pac. 742, 20 Am. & Eng. Ann. Cases, 148, and the rule has been applied to incumbents of office, the performance of the duties of which demanded active and constant labor of mind and body, to-wit, it has been applied to a city marshal (*Cook* v. *Marseilles,* 139 Ill. App. 536) ; it has been applied to a superintendent of streets (*Stephens* v. *Old Town,* 102 Me. 21, 65 Atl. 115) ; it has been applied to a clerk of a school district (*Gibson* v. *Roach,* 2 App. Div. 86, 37 N. Y. Supp. 567.) The reason for the rule is clearly expounded in *Woods* v. *Potter,* 8 Cal. App. 41, 95 Pac. 1125. The supreme court of Wyoming has held that even though the court believe that the legislature intended to provide a compensation for services of certain officers, yet, finding no statute, it would not usurp the functions of the legislature and provide compensation when none had been provided by the law-making body. (See *Taylor* v. *Big Horn County,* 11 Wyo. 106, 70 Pac. 835.) We believe that when a public officer seeks compensation at law by virtue of having been such, then is it incumbent upon him

to show warrant in law for such compensation. What warrant in law has plaintiff put forth for the basis of the action of the lower court in rendering judgment against the municipality? The ordinance specifying the amount appropriated for each fund and the salary to be paid each officer of the city provided that the compensation of the members of the police department serving as patrolmen should be $1,200 per annum, *etc.* When the complaint failed to show that plaintiff and his assignors served as policemen during the time for which they claim salaries, then the complaint failed to bring them within the conditions and provisos fixed by the council in their law providing compensation for these public officers, and there was no warrant in law for the subsequent judgment, because no other law was shown whereon they might recover.

Whatever liability may attach to the governmental officer committing a tort about the governmental functions of the municipality, no liability attaches to the municipality itself for wrongs committed by its officers, agents or servants in the course of performance of governmental functions. (28 Cyc. 1257.)

We further insist that under our statutes, as to the writ of mandate and its functions, the plaintiffs could have obtained full relief by mandate, and could not only have determined in that action any right to the office, but also been restored to any right to the enjoyment of the office, if they were entitled to any compensation at all when not serving. And we contend that *mandamus* is the proper, the correct, the full and only remedy. (See *State ex rel. Great Falls Waterworks* v. *Great Falls City Council,* 19 Mont. 519, 49 Pac. 15; *State ex rel. Kaiser* v. *Phillipsburg,* 23 Mont. 16, 57 Pac. 405.) Turning from the decisions of our own state, we find the doctrine supported by the overwhelming weight of authority from other jurisdictions. A collation of the authorities is found in 19 American and English Encyclopedia of Law, second edition, 783, note 1, embracing citation to forty-nine cases from other jurisdictions, including Arkansas, California, Colorado, Georgia, Idaho, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Nebraska, New York, North Carolina, Ohio, Oregon, South Carolina, Wisconsin, Canada. (See, also, *State*

*ex rel. Dudley* v. *Dagget,* 28 Wash. 1, 68 Pac. 340; *Williams* v. *Clayton,* 6 Utah, 86, 21 Pac. 398.)

To the proposition that a judgment in *mandamus* is a proper bar to all issues which might have been litigated therein, we cite 26 Cyc. 485, *Weed* v. *Mirick,* 62 Mich. 414, 29 N. W. 78, *Kaufer* v. *Ford,* 100 Minn. 49, 110 N. W. 364, and particularly the case of *Achey* v. *Creech,* 21 Wash. 319, 58 Pac. 208, holding, according to a summary found in a note in Cyc.: "A party having the right to plead and recover damages in a *mandamus* proceeding, after having prosecuted to final judgment an action for *mandamus,* cannot institute a second action to recover damages." (*People* v. *Musical Pro. Union,* 118 N. Y. 101, 23 N. E. 129; *Marion Beneficial Society* v. *Commonwealth,* 31 Pa. 82; *Fire Eng. Co.* v. *Commonwealth,* 93 Pa. 264.)

*Messrs. Geo. M. Bourquin, W. E. Carroll,* and *W. R. Kirk* submitted a brief in behalf of Respondent; *Mr. Carroll* argued the cause orally.

All laws fixing salaries for public officers contemplate and imply the salary is for services and for serving as such officer, even if not expressly so stated. All salaries for public officers are intended as and for compensation for services rendered by the officer to and for the benefit of the public. At the same time the salary is also an incident to the office, and is the officer's due, though he be wrongfully excluded from the office and performs no service. Had the ordinance in question here provided that the patrolmen would receive salary only while "actually employed," as in *Gibbs* v. *City,* 73 N. H. 265, 61 Atl. 128, or for "the time engaged in active service," as in *Wilkinson* v. *City,* 111 Mich. 585, 70 N. W. 142, and *Hawkins* v. *City,* 149 Mich. 268, 112 N. W. 997, the rule contended for by appellant might apply. But since it does not so provide, the rule has no application. Plaintiff and his assignors were in the police service as patrolmen, though illegally discharged, and are entitled to their salaries as incidents of their offices—and that even though they did not offer to perform any services. (28 Cyc. 526; *Newberry* v. *Smith,* 157 Mich. 181, 121 N. W. 747; *City* v. *Corley,* 25 Ky. Law Rep.

2174, 80 S. W. 203; *State etc.* v. *Walbridge,* 153 Mo. 194, 54 S. W. 447; *City* v. *Estes,* 35 Tex. Civ. App. 99, 79 S. W. 848; *French* v. *City,* 190 Mass. 230, 76 N. E. 730; *Everill* v. *Swan,* 20 Utah, 56, 57 Pac. 716; *Bringgold* v. *City,* 27 Wash. 202, 67 Pac. 612; *Reising* v. *City* (Or.), 111 Pac. 377; *Fitzsimmons* v. *City,* 102 N. Y. 536, 55 Am. Rep. 835, 7 N. E. 787; *Andrews* v. *Portland,* 79 Me. 484, 10 Am. St. Rep. 280, 10 Atl. 458; *Leonard* v. *Terre Haute* (Ind. App.), 93 N. E. 872.)

An officer wrongfully ousted or excluded from his office is still an officer, still in the service, still serving as an officer, though not actively so. "They also serve who only stand and wait." (Milton.)   A patrolman is always "serving" as such officer, whether on or off duty, whether in actual possession of his office or excluded by a wrongdoer as here.

The stamp of illegality having been put upon plaintiff's ouster, in contemplation of law he was always in possession of and serving his office, and never out of possession nor out of service. Through no fault of his own and against his will prevented from performing the duties of his office, he is excused therefrom and still is entitled to the incidental salary, it nowise depending on actual performance of services unless by statute or ordinance expressly made so.   (See cases last before cited.)   His suspension was a nullity.

When the mayor wrongfully discharged or ousted respondent and his assignors from their offices, the city (appellant) promptly ratified his act and made his tort its own, by acquiescence and by refusing to permit their names to remain on its payroll.   It perpetuated the wrong.   (See *City* v. *Cabiness,* 44 Tex. Civ. App. 587, 98 S. W. 925, on ratification; *Gibbs* v. *City,* 73 N. H. 265, 61 Atl. 128.)   Hence, either as salaries incidental to the offices, or as damages for the tort, the appellant is liable to the extent of the recovery here.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Prior to December 18, 1909, the plaintiff herein and twelve others, his assignors, had been duly and regularly appointed

patrolmen upon the police force of the city of Butte, under the provisions of an ordinance of the city enacted in pursuance of, and to carry into effect, the act of the legislature approved March 7, 1907, commonly known as the "Police Commission Bill." On the date mentioned, Charles P. Nevin, mayor of the city, summarily dismissed and removed them from the force, and caused their names to be stricken from the city payroll. On December 20, 1909, they instituted *mandamus* proceedings in the district court of Silver Bow county, which, on April 23, 1910, resulted in a judgment declaring the action of the mayor unlawful, because violative of the provisions of the ordinance and the Police Commission Bill, and directing a peremptory writ to issue to him, commanding him to restore them to their places. In the meantime, in the expectation that the writ would issue, they had held themselves in readiness to resume the discharge of their duties as patrolmen. Upon their restoration to office on April 27, 1910, each presented to the city council a claim, duly verified, for his salary during the time elapsing from the date of his discharge until he was restored to his place, at the rate of $100 per month, as fixed by the city ordinance. The council failed and refused to audit and allow it. Thereupon the plaintiff, for himself and as assignee of the claims of all the others, brought this action to recover from the city the amount so claimed to be due. The thirteen counts in the complaint are identical, and allege, substantially, the facts above stated.

The defendant contested its liability on the grounds: (1) That, inasmuch as the plaintiff and his assignors did not perform any services as patrolmen after their removal from the force, they cannot lawfully claim compensation, even though they were wrongfully excluded from office by the mayor; and (2) that, having instituted *mandamus* proceedings to obtain a restoration to office and having omitted in those proceedings to assert their claims for compensation, which they might have done, they split their causes of action, with the result that the final judgment therein is a bar, by way of estoppel, to recovery in this action. The trial court held that these defenses were not available to the defendant, and rendered and caused to be entered judgment for

the plaintiff for the full amount claimed. The defendant has appealed from the judgment and an order denying its motion for a new trial. It is insisted that the court erred in disregarding each of these defenses.

The contention of counsel in support of the first defense may be stated as follows: That an officer is not entitled to compensation for the performance of duties pertaining to his office, unless such compensation is fixed and allowed by law; that otherwise his services are to be deemed gratuitous; that when the law attaches compensation to an office, coupled with a provision, express or implied, that it is due and payable for services actually rendered, the right to receive it is lost, if the person holding title to the office fails, for any reason, to perform the services, even though he is prevented from doing so by the wrongful act of another, as that of a superior officer; that the ordinance under which the plaintiff and his assignors were appointed provides compensation for actual service only, and hence, since it appears that they performed no service while out of office, the defendant is not liable for their salaries during that time.

We have no difficulty in giving assent to the rule that, when a public officer claims compensation for the performance of duties [1] appertaining to his office, either by way of fees or salary, he must be able to support his claim by pointing to some provision of law authorizing him to demand it. In *McGillic* v. *Corby,* 37 Mont. 249, 95 Pac. 1063, 17 L. R. A., n. s., 1263, it was said: "The right of a public officer to compensation for the performance of duties imposed upon him by law does not rest upon contract, but is incident to the right to hold office; and, unless compensation is allowed by law, he may not lawfully demand payment as upon a *quantum meruit* for services rendered." The rule is recognized in the early case of *Territory* v. *Carson,* 7 Mont. 417, 16 Pac. 569, in which it was held that, though the duties appertaining to the office of a probate judge were enlarged during his term, he was not, for that reason, entitled to additional compensation, the statutes enlarging his duties not so providing. In *Wight* v. *Board of County Commissioners,* 16 Mont.

·479, 41 Pac. 271, it was held that, since the statute fixed the compensation of a county surveyor at $7 per day while making a survey, but contained no provision for expenses, he was not entitled to have his expenses allowed by the board of county commissioners. The rule was again recently recognized in *State ex rel. Rowe* v. *District Court, ante,* p. 318, 119 Pac. 1103. It is closely adhered to by text-writers and courts generally, as is shown by the collection of cases in *Wight* v. *Board of County Commissioners, supra.* It is based upon considerations of public policy. As was well said in *Territory* v. *Carson, supra:* "The successful effort to obtain office is not infrequently speedily followed by efforts to increase its emoluments, while the incessant changes which the progressive spirit of the times is introducing effects, almost every year, changes in the character and additions to the amount of duty in almost every official station; and to allow these changes and additions to lay the foundation for claims for extra services would soon introduce intolerable mischief."

With the second proposition involved in counsel's contention, we do not agree. The ordinance, the substance of which, so far as it has to do with the compensation of patrolmen, is set out in the transcript, and declares simply that the compensation of the members of the police department *serving as patrolmen* is fixed at $1,200 per annum, payable in monthly installments of $100 each, and that an appropriation is made for such ·payment. There is no doubt of the soundness of the proposition that, when a statute or ordinance declares in terms that an officer shall receive compensation for actual services only, the fact of service determines his right to claim it. (*Gibbs* v. *City of Manchester,* 73 N. H. 265, 61 Atl. 128; *Wilkinson* v. *City of Saginaw,* 111 Mich. 585, 70 N. W. 142; *Hawkins* v. *Bay City,* 149 Mich. 268, 112 N. W. 997; 28 Cyc. 527.) But such cases arise out of statutes or ordinances containing explicit provisions requiring actual service as a condition precedent to a valid claim for compensation. The general rule is that a public officer is entitled to the compensation attached to the office, though he is not in active service, being unable to perform service because he has wrong-

fully been excluded or ousted from it. (Mechem's Public Offices and Officers, sec. 865; *Fitzsimmons* v. *City of Brooklyn,* 102 N. Y. 536, 55 Am. Rep. 835, 7 N. E. 787; *Andrews* v. *Portland,* 79 Me. 484, 10 Am. St. Rep. 280, 10 Atl. 458; *Leonard* v. *Terre Haute* (Ind. App.), 93 N. E. 872; *Reising* v. *City of Portland,* 57 Or. 295, 111 Pac. 377; *City of Louisville* v. *Corley,* 25 Ky. Law Rep. 2174, 80 S. W. 203.) A police officer comes within this rule; and when he has been removed without legal cause, though by one having authority to remove for cause, the removal is a [2] nullity, and he is entitled to the salary accruing after such removal, unless by his acquiescence he must be deemed to have abandoned his office. (28 Cyc. 526; also cases cited *supra.*) In this case there was no acquiescence in the action of the mayor; on the contrary, proceedings were at once instituted to overturn it, and they were prosecuted promptly to judgment. It has been declared by this court that one regularly appointed to service as a policeman or patrolman is an officer whose term continues during good behavior, or until he is disqualified by reason of age or disease, and that he cannot be removed, except for cause found in pursuance of the statute. (*State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940; *Id.,* 40 Mont. 287, 106 Pac. 695; *State ex rel. Wynne* v. *Quinn,* 40 Mont. 472, 107 Pac. 506.) We do not think the word "serving," as used in the ordinance, imposes any restriction upon the officer to claim, or upon the municipality [3] to pay, compensation during the continuance of the term. The phrase "serving as patrolmen" is equivalent to the phrase "for services as patrolmen"—a form of expression commonly used to designate the character of services intended, but imposing no limitation upon the right to compensation, so long as title to the office continues. We must presume, too, that the court below had before it the ordinance itself, instead of its substance; and therefore that its construction of it was correct. We are supported in this conclusion, persuasively at least, by the clause of the Constitution (Article VII, section 4), which provides that the governor and other state officers "shall quarterly, as due, during their continuance in office, receive for their services," etc., and also by the statute, which provides: "County officers are

.entitled to receive as annual compensation or salary for services," etc. (Rev. Codes, sec. 3116.) No one has ever questioned the right of such an officer to receive the salary attached to his office, merely because he has been unlawfully ousted therefrom, and for this cause has not been able to render services. Indeed, the legislature, by declaring that no warrant shall be drawn for any part of a salary, pending a contest for the office to which it is attached, until the contest has been finally determined (Rev. Codes, sec. 375), recognizes the principle that he who has the title may receive the salary incident to it, whether he serves or not.

Nor do we think that the *mandamus* proceedings should be held to operate as an estoppel upon plaintiff to maintain this action. It seems to us to be the better rule that the person entitled to an office cannot successfully maintain a claim for compensation until he has made good his claim to the office. So when one has been unlawfully removed by a superior officer, who has the power, under proper circumstances, to make the removal, he **[4]** should first have himself restored to his place, before he can maintain an action for his compensation. The *mandamus* proceedings had this for their object. They were instituted for this purpose only. The city council had taken no part in the unlawful act of the mayor, and therefore was not liable to an action in that behalf, nor at all, until it refused to pay the compensation due. It may be that under the authority of *State ex rel. Great Falls Waterworks Co.* v. *City of Great Falls*, 19 Mont. 518, 49 Pac. 15, and *State ex rel. Kaiser* v. *City of Philipsburg*, 23 Mont. 16, 57 Pac. 405, *mandamus* might have been resorted to as a substitute for this action. We shall not stop to determine whether it might or not. Suffice it to say, that the plaintiff and his assignors, by bringing the *mandamus* proceedings and **[5]** prosecuting them to judgment, did not split their cause of action by failing to claim damages against the mayor, but merely put themselves in the position to maintain this action in case the city refused to pay them. They could not maintain an action to recover their compensation until it had been judicially determined that they had been wrongfully ousted. (*McVeany* v.

*Mayor, etc.*, 80 N. Y. 185, 36 Am. Rep. 600.)    The course pur-
sued in this case was recognized as proper in *Kipley* v. *Luthardt*,
178 Ill. 525, 53 N. E. 74, and *City of Chicago* v. *Luthardt*, 191
Ill. 516, 61 N. E. 410.

It does not appear, nor is it even suggested, that the amounts
claimed by plaintiff and his assignors have been paid to other
persons serving in their places during the time they were ousted
from the police force.    The city is therefore liable for the full
amount.

. The judgment and order of the district court are affirmed.

*Affirmed.*

Mr. Justice Smith and Mr. Justice Holloway concur.

