(24 App. Div. 563.)

PEOPLE ex rel. BRODERICK v. MORTON et al.

(Supreme Court, Appellate Division, Third Department. January 12, 1898.)

**1. OFFICERS—REMOVAL—RIGHTS OF VETERANS.**

Under Laws 1894, c. 716, providing that honorably discharged Union veterans shall be preferred for employment, and shall be removed only for incompetency and conduct inconsistent with the positions held by them, the dismissal of a veteran because an elevator which he had run was stopped for six weeks for repairs was improper.

**2. SAME.**

Whenever economy requires the reduction of a force of laborers, none of whom are hired for a specified time, the veteran must be the last to be discharged, under said statute.

**3. MANDAMUS—TRUSTEES OF PUBLIC BUILDINGS.**

A court has jurisdiction to issue a writ of mandamus against the trustees of public buildings, composed of the governor, lieutenant governor, and the speaker of the assembly, since they are not affected thereby in their respective executive or legislative capacities.

**4. SAME—POWER TO EXECUTE WRIT.**

The 'question whether the court has sufficient force to execute a writ of mandamus is not to be considered in determining whether applicant is entitled to the writ.

**5. OFFICERS—REMOVAL OF VETERANS—REINSTATEMENT.**

A veteran designated on the pay rolls under the general head of "laborers," when discharged in violation of Laws 1894, c. 716, is not entitled to be reinstated by mandamus to his former position, but only to some kind of work included in the general line performed by "laborers."

**6. MANDAMUS—PRAYER AND RELIEF.**

Where an alternative writ of mandamus is issued, and the facts of the case are developed on the trial, the order made thereon may award such a final writ as the facts warrant, though relator has asked for too much, since such proceedings are made analogous to actions by Code Civ. Proc. § 2082.

**7. SAME—RIGHT TO RECOVER DAMAGES.**

Where an alternative writ of mandamus was directed to persons in their capacity as trustees of public buildings to compel the reinstatement of a veteran who had been discharged in violation of Laws 1894, c. 716, and a peremptory writ would have to be executed against different persons who had succeeded defendants as trustees, the damages caused by the wrongful discharge could not be recovered, though expressly authorized in general cases by Code Civ. Proc. § 2088, since under Laws 1894, c. 716, § 1, such damages are recoverable from the trustees in their individual capacity.

Appeal from special term.

Action of mandamus by the people, on the relation of Michael Broderick, against Levi P. Morton and others, as trustees of public buildings, and Frederick P. Easton, as superintendent of public buildings. From an order confirming the report of a referee, and dismissing the alternative writ of mandamus, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

M. D. Nolan, for appellant.

G. D. B. Hasbrouck, Dep. Atty. Gen., for respondents.

PARKER, P. J. The following facts clearly appear from the record in this case: The relator was employed as an "orderly," so

called, in the maintenance department of the public buildings at Albany. He was an honorably discharged Union sailor of the war of the Rebellion. About a month after such employment he was assigned to the duty of running one of the senate elevators in the capitol building, and continued at such work until October 2, 1895. For such service he was paid the sum of $75 per month. The superintendent of public buildings, subject to the approval of the trustees, appoints, and suspends or removes, all persons employed in such department, and also prepares rules and regulations for their government. Laws 1893, c. 227, § 4. It seems that persons employed in such department by the superintendent are designated on the pay rolls as orderlies, watchmen, cleaners, and laborers. Those running elevators are included within the list of laborers. "Some of the duties of laborers are to run elevators; some are cleaning the park, shoveling snow," etc. Their pay is regulated by the work they do. Whether the orderlies are employed to perform any specifically defined duties does not appear. But inasmuch as the relator was so soon after employment put to the performance of a laborer's work, and continued in it for so long a time, he must be deemed to have been an employé of that class when he was discharged. On the 2d of October, 1895, the relator was discharged. The referee finds that he was then dropped from the pay rolls, but not discharged. The facts, however, which he finds, and which are undisputed, clearly show that he was then discharged, and he has never since been re-employed. At the time he was so discharged there were many men employed performing the work of laborers who were not discharged soldiers or sailors, and some of them were then running other elevators in the building. No charges of "incompetency, or conduct inconsistent with the position which he held," were ever made against the relator. The reason given for his discharge was that the elevator which he was then running was about to be stopped for extensive repairs, and that his services were therefore not needed. Soon after the discharge repairs were begun upon that elevator, and for some weeks it was not used, but it was put into operation again within four to six weeks after such repairs began upon it. On or about February 24, 1896, the relator began these proceedings by mandamus to require the trustees and superintendent of public buildings to "restore him to his said position of running an elevator, and to reimburse him with a sum equivalent to what his salary would have amounted to from the date of his dismissal to the date of his reinstatement."

By chapter 716, Laws 1894, it is provided that, in every public department and upon all public works "of this state, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment," etc.; "and in all cases the person having the power of employment or appointment, unless the statute provides for a definite time, shall have the power of removal only for incompetency and conduct inconsistent with the position held by the employé or appointee." The relator claims that his removal was in violation of the provisions of the act above cited. The defendants make several answers to this claim.

First, that, because the running of the elevator upon which he was employed was necessarily stopped, his services had become unnecessary, and that, therefore, it was the duty of the defendants to no longer employ him; and they attempt to bring this case within the authority of Phillips v. Mayor, etc., 88 N. Y. 246; Langdon v. Mayor, 92 N. Y. 427; People v. Adams, 51 Hun, 583, 4 N. Y. Supp. 522; People v. Mayor of City of Brooklyn, 149 N. Y. 225, 43 N. E. 554. It is manifest, however, that the principle decided in that line of cases cannot apply to this. In those cases the office from which the relator had been removed was in good faith abolished; in this, there is no office to abolish. Many laborers were needed and continued about the building, some of whom were not discharged soldiers or sailors. And, inasmuch as the statute provides that such soldiers and sailors shall be preferred for employment over those who are not, it seems clear that whenever economy requires the reduction of such a force of laborers, none of whom are hired for any specified time, the soldier and sailor must be the last, rather than the first, to be discharged. In re Sullivan, 55 Hun, 285, 8 N. Y. Supp. 401; McCloskey v. Willis, 15 App. Div. 594, 44 N. Y. Supp. 682; People v. Adams, 53 Hun, 141, 6 N. Y. Supp. 128. Moreover, the particular elevator upon which relator was employed was never abandoned. A temporary cessation of its use occurred, but it was soon in operation again, and therefore it cannot even be said that the particular employment to which the relator had been put was no longer necessary.

The respondents also object that the writ of mandamus could not properly issue, because "its enforcement could not be secured." This idea is based upon the theory that, because the trustees of public buildings consist of the governor, the lieutenant governor, and the speaker of the assembly, this court has no jurisdiction to issue its writ against them. It is clear that the writ does not propose to interfere with the executive department of the state. It is not directed to Levi P. Morton in his character as governor. It does not require him to do any act concerning the execution of the duties of that office. Hence it is no infringement upon the rule that one department of the government may not interfere with another of the co-ordinate departments in the legitimate exercise of its jurisdiction and powers, and the argument of the learned counsel for the respondents does not exactly claim that it is. His argument is that, if the writ does issue, the court would have no power to enforce it, should the governor and lieutenant governor refuse to obey. In this case, those two officials are before this court as members of a board, created by law, and, like every other board so created, amenable to the law. It is not to be supposed that they will refuse obedience to that law; much less is it pertinent to suppose that either would invoke the power of the executive to resist obedience to the law. A mandamus is sometimes refused when the legal power to obey it has passed from the board or tribunal to which it is directed (People v. Hoyt, 66 N. Y. 606); but the idea that it should be denied, because its execution might be successfully resisted, is no more pertinent to the issuing of such a writ than it would be to a warrant of

arrest for murder or any other process of the court. The question whether the court has sufficient force to execute the writ is not to be considered in determining whether the citizen who applies for it is or is not entitled to it.

The respondents further object that the relator has asked for more than he was entitled to, in two particulars: First, that he was not entitled to be "reinstated to his former position of running an elevator"; and, secondly, that he asks to recover his damages in this proceeding. And hence they claim that the writ should be dismissed.

As to the first objection, the relator has asked more than he is entitled to. He was employed as a laborer in the "maintenance department of the public buildings." All men so employed are subject to the directions of the superintendent, who may assign any one of them to any work he deems for the best interests of that department. I do not understand from the record before us that any laborer has secured the right to continue running an elevator because he has once been assigned to that work. Men are taken from other work as laborers, put upon the elevators, and then ordered back to their former work. As a laborer, he is not hired for that particular work, but to do any in that grade to which the superintendent shall assign him. During all the time of his employment, therefore, I understand the relator was subject to removal from the elevator and assignment to other work, although such change would have lessened his monthly wages. His rights, therefore, under this statute, were that he be preferred in his employment as a laborer to those who were not honorably discharged soldiers or sailors. And all that he could lawfully demand was that he be reinstated to his position as a laborer, subject to all the regulations affecting that class of employés. But an alternative writ having been issued, and the facts of this case having been developed by a trial, I see no reason why the order made thereon may not award such a final writ as the facts warrant. Such proceedings are made analogous to those in an action (Code Civ. Proc. § 2082), and the judgment may therefore be consistent with the facts proven. In People v. Supervisors of Queens Co., 142 N. Y. 271–278, 36 N. E. 1062, it is said:

"If the substantial right is set out in the writ, the proceeding will not fail because the relator asks for too much, or mistakes to some extent the relief to which he is entitled. The court, in awarding the peremptory writ, may mold it according to the just right of all parties."

As to the second objection, it is not so clear that the relator has asked too much. The statute above cited not only allows the person "so wrongfully removed or refused such preference" the remedy by mandamus, but also gives him "right of action in any court of competent jurisdiction for damages as for an act wrongfully done." By section 2088 of the Code, it is, in substance, provided that, where a return has been made to an alternative writ of mandamus, the court, upon final order, must also, if the relator so elects, award to him, against the defendant who makes the return, the same damages, if any, which the relator might recover in an action against the defendant for a false return. It also further provides as follows:

"The relator may require his damages to be assessed upon the trial of an issue of fact if the verdict, report or decision is in his favor. * * * Such an assessment of damages bars an action for a false return."

Such was the rule under the Revised Statutes. People v. Supervisors of Richmond Co., 28 N. Y. 112, where the damages allowed were confined strictly to those resulting from the false return of the supervisors to whom the writ was directed.

In People v. Musical Mutual Protective Union, 118 N. Y. 101, 23 N. E. 129, it was held that damages incurred by the relator from being removed as a member of the defendant company were properly allowed him in mandamus proceedings instituted to compel his restitution. See, also, People v. Whappingers Falls, 151 N. Y. 386, 45 N. E. 852. Within the authorities last above cited, the relator's damages accruing to him on account of his unlawful removal could be recovered in this proceeding, although it is plain they are not such as he could recover for a false return; but this further peculiarity presents itself in this case: The proceeding is, in effect, against the trustees and superintendent of public buildings, as a board of public officers, and not against the individuals. Unless we consider it in that character, we would have to dismiss the writ on the ground that those to whom it was directed were no longer in a condition to obey it, having passed out of office and been succeeded by others. People v. Maher, 64 Hun, 408, 19 N. Y. Supp. 758. Thus this writ must be executed against persons who, although they are the same officers, are not the same individuals who made the wrongful removal. The statute above cited bases the damages which it gives to the relator upon the "act wrongfully done." That statute, as amended by chapter 821, Laws 1896, in addition to giving damages, provides that a refusal to give the preference, etc., "shall be deemed a misdemeanor." An intent on the part of the legislature is here manifested to hold those who committed the wrong liable as individuals rather than as public officials. The ones who could be prosecuted for the misdemeanor are the ones who are to pay the damages, and, in my opinion, it was not intended to charge such damages against the state, or against the fund provided by the state for the expenses of that department. Hence I conclude that, under the circumstances of this case, those to whom the writ must issue to reinstate the relator are not those against whom the right of action for damages is given, and therefore that the relator cannot recover them in this proceeding. But, as above said, where an alternative writ has been granted and a trial had, the final order may award the proper writ, although the petition may have asked too much. These considerations lead to the result that the order confirming the referee's report, and dismissing the writ, must be reversed; and inasmuch as the question of damages is not to be considered, and the facts are all before this court, we can direct that such a peremptory writ issue as the facts require.

The order appealed from is reversed, with $10 costs and disbursements of this appeal, and with costs to the appellant in the court below; and an order is granted directing that a peremptory mandamus issue requiring the trustees and superintendent of public buildings

to reinstate the relator, Michael Broderick, in his employment, as a laborer, in the capitol building, held by him on and prior to October 2, 1895, without prejudice to an action or proceeding to recover damages for his removal.  All concur; PUTNAM, J., in result.