BAILEY, APPELLANT, *v.* EDWARDS, RESPONDENT.

(No. 3,227.)

(Submitted February 14, 1913.   Decided March 27, 1913.)

[134 Pac. 670.]

*Mandamus—Damages Recoverable—Judgment—Res Adjudicata —Police Officers—Wrongful Discharge—Action for Damages —Nonsuit—When Proper.*

Mandamus—Judgment—*Res Adjudicata.*
    1. *Mandamus,* though a remedy civil in its nature, is not a civil action in the sense that the parties to such a proceeding and their privies are, on principles of *res adjudicata,* barred by the judgment from thereafter maintaining an action for damages flowing from the wrong which gave rise to the proceeding in *mandamus.*

Same—Damages Recoverable.
    2. The damages allowable under section 7224, Revised Codes, in a *mandamus* proceeding are such as are incidental to the proceeding itself, and not those arising out of the transaction which the writ was invoked to redress.

Same—Police Officers—Wrongful Discharge—Action for Damages.
    3. *Held,* under the rule announced in paragraph 1, *supra,* that a police officer who had successfully prosecuted a *mandamus* proceeding

for reinstatement to office from which he had been unlawfully removed, was not barred, by reason of such judgment, from thereafter maintaining an action against the mayor personally to recover damages measured by the salary which plaintiff would have earned but for such exclusion from office.

Police Officers—Wrongful Discharge—Action for Damages—Nonsuit, When Proper.

4.   Plaintiff, in an action against the mayor of a city personally, charged that he had been damaged by the loss of his salary in consequence of his dismissal and subsequent preclusion from the police force, contrary, to the provisions of the Metropolitan Police Law.   His evidence showed that upon his restoration to office, about eighteen months thereafter, he presented his claim for accrued salary, which was rejected for some reason not made apparent, but did not disclose that the city, though liable for his salary during the entire period of unlawful preclusion, could not be made to respond.   *Held,* that an order of nonsuit was proper, no causal connection between the unlawful preclusion and loss of emoluments being made to appear.

*Appeal from District Court, Lewis and Clark County; E. K. Cheadle, Judge of the Tenth Judicial District, presiding.*

ACTION by Leonard Bailey against Frank J. Edwards.  From a judgment of nonsuit, plaintiff appeals.  Affirmed.

*Mr. Wm. T. Pigott,* and *Mr. Massena Bullard,* for Appellant, submitted a brief; *Mr. Pigott* argued the cause orally.

Defendant is bound by the judgments in the *mandamus* proceedings.  The judgments in those cases preclude and estop him from denying the truth of the facts established, or which might have been established, therein and from questioning the law as there declared.  Those judgments are final and conclusive in this action as to all the issues which were actually determined and as to all matters which might have been litigated as part of the subject in controversy in the former actions.  (*Everill* v. *Swan,* 20 Utah, 56, 57 Pac. 716; *Walsh* v. *Raymond,* 58 Conn. 251, 18 Am. St. Rep. 264, 20 Atl. 464; *McIntosh* v. *Pittsburgh,* 112 Fed. 705; *Chisolm* v. *Caines,* 121 Fed. 401; *Ashton* v. *Rochester,* 133 N. Y. 187, 28 Am. St. Rep. 619, 30 N. E. 965, 31 N. E. 334; *Grider* v. *Tally,* 77 Ala. 422, 54 Am. Rep. 65; 23 Cyc. 1245; 26 Cyc. 486.)  A proceeding in *mandamus* is a personal action.  It lies to compel the performance of a personal duty.  (*State ex rel. Stranahan* v. *Board of State*

*Canvassers,* 32 Mont. 13, 4 Ann. Cas. 73, 79 Pac. 402.) Plaintiff pleaded the former proceedings and judgments as estoppels against defendant. Defendant himself pleaded those proceedings and judgments, and the issues and evidence therein, and asked the court to consider them. He relied upon them as *res judicata* as to damages. Plaintiff's plea was by way of estoppel by *res judicata* as to certain issues of fact and law.

The defendant is liable in damages. It matters not whether he was actuated by personal ill-will or malice, or was moved by the purest motives, in unlawfully discharging plaintiff and his assignors and preventing them from serving as policemen. Defendant's duty with respect to them was merely ministerial and executive, free from discretionary power. If, however, there was express malice, exemplary damages could be recovered. The only case we have discovered in which actual malice was deemed a necessary ingredient in a cause of action against such an officer as defendant for the unlawful dismissal of policemen is *Burch* v. *Hardwicke,* 30 Gratt. (Va.) 24, 32 Am. Rep. 640, and there the court held that it would assume malice because the defendant successfully objected to the plaintiff's offer to prove malice. In the present action, the proofs established either that defendant was prompted solely by personal malice or was reckless of law and of the legal rights of plaintiff and his assignors. But the element of maliciousness is only material when punitive damages are sought. The question of defendant's liability in the circumstances here existing is not an open one in Montana. (See *Smith* v. *Zimmer,* 45 Mont. 282, 125 Pac. 420; 29 Cyc. 1441, 1442.) "By the weight of authority, an unconstitutional law affords no protection to officers who act under it. * * * " (8 Cyc. 805, 769, and cases cited.) Where the law requires absolutely a ministerial act to be done or not to be done by a public officer, and he violates that law, he must answer in damages to the person aggrieved by his misconduct or nonfeasance. "A mistake as to his duty and honest intentions will not excuse the offender." (*Amy* v. *Supervisors,* 11 Wall. (U. S.) 136, 20 L. Ed. 101; *Tracy* v. *Swartwout,* 10

Pet. (U. S.) 80, 9 L. Ed. 354; *Booth* v. *Lloyd,* 33 Fed. 593;
*Belknap* v. *Schild,* 161 U. S. 10, 40 L. Ed. 599, 16 Sup. Ct. Rep.
443; *Scott* v. *Donald,* 165 U. S. 58, 41 L. Ed. 632, 17 Sup. Ct.
Rep. 265; *Mock* v. *City of Santa Rosa,* 126 Cal. 330, 58 Pac.
826.) A justice of the peace is liable, in an action of tort, to
a person arrested on a warrant issued under an unconstitutional
statute. So are the persons who aided in the arrest, or caused
a fine to be imposed. (*Kelly* v. *Bemis,* 4 Gray (Mass.), 83, 64
Am. Dec. 50; *Sumner* v. *Beeler,* 50 Ind. 341, 19 Am. Rep. 718;
*Grider* v. *Tally,* 77 Ala. 422, 54 Am. Rep. 65; *Clark* v. *Miller,*
54 N. Y. 528; *Kinneen* v. *Wells,* 144 Mass. 497, 59 Am. Rep.
105, 11 N. E. 916.)

The district court held, in granting the motion for judgment
in favor of defendant, that the identical matter in controversy in
this action was involved in the four actions referred to in the
testimony and in the judgment-rolls which were offered in evi-
dence, being proceedings in the nature of *mandamus* proceed-
ings, wherein the plaintiff and his assignors were reinstated on
the police force of the city of Helena, wherein it was adjudged
that the ordinance was invalid, and the proceedings under which
the plaintiff and his assignors were dismissed were void, and the
action of the mayor and city council in dismissing them was
nugatory. Many of the issues were common to this action and
the four proceedings in *mandamus,* but the causes of action
here are not the causes of action in the proceedings. But the
defendant's assertion that the *mandamus* proceedings operated
as estoppels upon plaintiff to maintain this action was denied,
and the district court's view in that behalf held erroneous, in
*Peterson* v. *Butte,* 44 Mont. 401, 120 Pac. 483, and *Wynne* v.
*Butte,* 45 Mont. 417, 123 Pac. 531.

*Messrs. Walsh & Nolan* and *Mr. Edward Horsky,* for Respond-
ent, submitted a brief; *Mr. T. J. Walsh* argued the cause orally.

The essential particular in which the appellant's cause failed
was that it appeared that he did not suffer, and could not have
suffered, any damages on account of the acts charged. The

adjudications of this court have° demonstrated that anything that was done was utterly nugatory,—that the appellant and his colleagues remained police officers, each entitled to his salary as the months came and went. If the city declined at the end of any month to pay its obligation to him, he could sue and recover. No harm of any kind flowed from any of the acts complained of. The case of *Hill* v. *Mayor of Boston,* 193 Mass. 569, 79 N. E. 825, is directly in point. (See, also, *Millican* v. *McNeil* (Tex. Civ. App.), 50 S. W. 428; *Jones* v. *Loving,* 55 Miss. 109, 30 Am. Rep. 508.) In *Butler* v. *Kent,* 19 Johns. (N. Y.) 223, 10 Am. Dec. 219, the very sensible rule is asserted that "an individual cannot maintain an action against an officer or other person for damages arising from a breach of duty to the public, without showing some special and peculiar injury to himself." The case of *McHenry* v. *Sneer,* 56 Iowa, 649, 10 N. W. 234, is closely analogous.

The subject of *mandamus* is covered in Montana by sections 7213–7226, Revised Codes. They were taken from California, sections 1084–1097, Kerr's Code of Civil Procedure. There are no California decisions applicable to the case at bar. Washington has the same statute as Montana in reference to the award of damages in *mandamus* proceedings. (Laws 1895, sec. 26.) The effect of a judgment in *mandamus,* as a bar to a subsequent action for damages, was directly passed upon by the supreme court of Washington in the case of *Achey* v. *Creech,* 21 Wash. 319, 58 Pac. 208, where it was said:

"The respondent elected to prosecute her rights in the statutory form of *mandamus.* That action was prosecuted to final judgment, and, when a party has a choice of remedies by *mandamus* or suit for damages, the adoption of one bars the right to invoke the other. (Merrill on Mandamus, par. 311; *Kendall* v. *Stokes,* 3 How. (U. S.) 87, 11 L. Ed. 506; *State* v. *Ryan,* 2 Mo. App. 303.)  *  *  *  Having, then, the right to plead and recover damages in the *mandamus* proceeding, the law will presume that she demanded and received in that action all that she was entitled to, and the defendant will not be subjected to the

defense of a multiplicity of suits, when all the subjects of the controversy could be decided in one action." Idaho also has the same statute as Montana. In the case of *Hill* v. *Morgan, Judge,* 9 Idaho, 777, 76 Pac. 765, the court used the following language: "If judgment be given for the applicant, he may recover the damages which he has sustained, as found by the jury, or as may be determined by the court or referee, upon a reference to be ordered, together with costs; and for such damages and costs an execution may issue; and a peremptory writ of mandate must also be awarded without delay." In Colorado, in *mandamus,* a judgment directing the sheriff to restore property and pay damages therein assessed was sustained. (*Bell* v. *Thomas,* 49 Colo. 76, 31 L. R. A. (n. s.) 664, 111 Pac. 76.) The supreme court of Washington has further construed said *mandamus* statutes and further affirmed *Achey* v. *Creech, supra,* in the case of *State* v. *Lamprey,* 57 Wash. 94, 106 Pac. 501. (See, also, 26 Cyc. 483; *Kendall* v. *Stokes,* 3 How. (U. S.) 87, 11 L. Ed. 506.)

MR. JUSTICE SANNER delivered the opinion of the court.

According to the complaint, the appellant, plaintiff below, and Moses Quintin, George Farnam and William F. Bossler were on June 1, 1908, members of the police force of the city of Helena; on that day the respondent "wrongfully, unlawfully, maliciously and oppressively, and under color of his pretended authority as mayor of said city, did without right or jurisdiction or authority, and contrary to the provisions of the statute in that behalf enacted," cause their dismissal and exclusion from office; and although they at all times and by all proper means protested against this exclusion and repeatedly reported for duty and tendered their services as members of the police force, they were by the act of respondent deprived of "all the insignia, badges, privileges and emoluments" of office until their restoration by judicial mandate on February 11, 1910. The personal claims of Quintin, Farnam and Bossler are alleged to have been assigned to the appellant, and he prays damages measured by

the salary of each officer during the period of deprivation, with interest.

Several questions are presented by the assignment of errors, but they are all resolvable into *one, viz.:* whether the trial court correctly granted respondent's motion for nonsuit. The order of nonsuit, to be sustained, must find support in one or the other of the following grounds: (1) That the appellant is barred and concluded from maintaining this action on principles of *res judicata;* (2) that the evidence does not show any damages suffered by plaintiff which are recoverable in this action.

1. It seems advisable to first dispose of the question presented by the pleas in the answer, to the effect that the appellant is [1] precluded from maintaining this action because he and his assignors prosecuted against the present respondent, as mayor of the city of Helena, their several *mandamus* proceedings in and through the district court of the first judicial district and to final decision by this court "for the same causes of action as are now pleaded and in which the matters now in controversy were, or might have been, determined."

It is disclosed by the reply that the fact-basis for the relief now sought is essentially the same as that for relief in the [2, 3] *mandamus* proceedings. Among the issues then presented and determined were "whether or not defendant, acting under the pretense and cover of his office as said mayor, but without authority of law and contrary to the provisions of the statute in that behalf enacted and without any right or justification so to do, on June 1, 1908, did unlawfully dismiss and discharge plaintiff from said police force and preclude him from the use or enjoyment of said place, and prevent him from performing any service or duty as a member of said force, and thereafter always prevented plaintiff from acting as such member and from discharging his duties as such, and deprived him of his badges and other insignia of his office and of his privileges as such member."

The loss of emoluments as a matter of special damage was not raised by the pleadings in the *mandamus* proceedings; but it is

quite clear that if causes of action as against Frank J. Edwards, personally, now exist in virtue of the claims of appellant and his confreres, they existed in part, if not *in toto,* at all stages of the *mandamus* proceedings against Edwards as mayor; and if these claims should have been litigated in those proceedings, then under the familiar principle, applicable in *mandamus* as elsewhere, that a judgment concludes the parties thereto and their privies as to all matters which might have been litigated as part of the subject in controversy, they cannot be litigated now.

The question is not free from perplexity. In the Chapter of our Codes relating to *mandamus,* we find provisions for a verified answer; for traversing the answer; for trial by jury of certain questions of fact; for judgment; and "if judgment be given [2] for the applicant, he may recover the damages which he has sustained, as found by the jury, * * * together with costs," *etc.* (Rev. Codes, sec. 7224.) This section is apparently an open door to any claim of damages whatsoever arising out of the transaction which the writ of mandate is invoked to remedy; and such—the expressed conclusion of some courts—is implied in the decisions of others to be found upon the subject. (*Achey v. Creech,* 21 Wash. 319, 58 Pac. 208; *Bell* v. *Thomas,* 49 Colo. 76, 31 L. R. A. (n. s.) 664, 111 Pac. 76; *People ex rel. Broderick v. Morton,* 24 App. Div. 563, 49 N. Y. Supp. 760; *People ex rel. Deerell* v. *Musical Mut. Pro. Union,* 118 N. Y. 101, 23 N. E. 129; *Marion Beneficial Society* v. *Commonwealth,* 31 Pa. 82; *Hibernia Fire Engine Co.* v. *Commonwealth,* 93 Pa. 264; *State* v. *Board of Commissioners,* 11 Kan. 66; *State ex rel. Race* v. *Cranney,* 30 Wash. 594, 71 Pac. 50; *State ex rel. Billings* v. *Lamprey,* 57 Wash. 84, 106 Pac. 501; *McClure* v. *Scates,* 64 Kan. 282, 67 Pac. 856; *People ex rel. Van Valkenburgh* v. *Sage et al.,* 3 How. Pr. (N. Y.) 56.) There are several considerations, however, which convince us that this cannot be the correct interpretation of the statute. In the first place, all the decisions which seem to hold that damages for the original wrong may be recovered in the *mandamus* proceeding are either upon statutes judicially declared to follow the Statute of Anne (9th Anne, Chap. 20) , or

they stand upon the theory that *mandamus* is, to all intents and
purposes, a civil action.   The Chapter of our Code relating to
*mandamus* has been part of our written law since the territory
was organized (Bannack Statutes, p. 123 *et seq.;* Codified Stats.
1872, p. 206 *et seq.;* Rev. Stats. 1879, p. 142 *et seq.;* Comp.
Stats. 1887, p. 206 *et seq.;* Code Civ. Proc. 1895, sec. 1960
*et seq.*) ; and very early in our history it was settled that *man-
damus* is not a civil action and that the Statute of Anne
is not in force with us (*Chumasero* v. *Potts,* 2 Mont. 242, 258,
*et seq.; Territory* v. *Potts,* 3 Mont. 364, 366).   In *Chumasero*
v. *Potts,* this court, touching the nature of *mandamus* said:
"To call this an action or suit at law would certainly be a mis-
nomer.   *   *   *   The manner in which the term 'civil action'
is used in these two sections [secs. 522, 529, Civ. Prac. Act, 1872;
Rev. Codes 1907, secs. 7218, 7225] shows conclusively that our
legislative assembly did not consider that the proceedings in
*mandamus* were a civil action.   *   *   *   The civil action has
reference exclusively to private wrongs.   *   *   *   What is the
nature of the proceeding called *mandamus?*   It is not applica-
ble as a redress for mere private wrongs.   *   *   *   It can be
resorted to only in those cases where the matter in dispute, in
theory, concerns the public and in which the public has an inter-
est.   *   *   *   The enforcement of the writ may incidentally,
and as a result, affect private rights, but this is not the prime
object of the issuance of the writ.   *   *   *   The attempt to
classify the proceedings in *mandamus* is always futile.   It is *sui
generis.*   Undoubtedly it may be called an extraordinary legal
remedy, civil in its nature.   *   *   *   But, being a remedy to
enforce public rights and not for the enforcement of private
rights or the prevention or redress of private wrongs, it is not
a civil action."   Again, in the recent case of *State ex rel.
Stuewe* v. *Hindson,* 44 Mont. 429, 442, 120 Pac. 485, we find the
following: "This proceeding is essentially *ex relatione.*   While
Stuewe is nominally the complaining party, the taxpayers of
Lewis & Clark county constitute the real party in interest; and
if it can be said that from the allegations contained in the affi-

davit and the alternative writ the taxpayers of the county are entitled to relief of any character, which can be granted in this proceeding, it is the duty of the courts to extend that relief, whether this relator individually desires it, or the attorney general opposes it. In our determination, we are not bound by the prayer of the relator, but may search the affidavit, and order such relief as the facts stated may warrant; for the relief is granted, not to Stuewe individually, but to the public, the real party in interest." Inferences, therefore, founded upon the Statute of Anne or upon the hypothesis that *mandamus* is a civil action, can have no validity to require such a construction of section 7224, Revised Codes, as respondent here seeks to evoke.

And this conclusion finds collateral support in the further fact that in a *mandamus* proceeding a jury is not a matter of right but of discretion. Any and all of the questions arising therein, whether of law or of fact, may be tried by the court without a jury, with or without a reference (sec. 7219, Rev. Codes; *Chumasero* v. *Potts, supra*). If the relator must litigate therein any private right to damages which he may have against the respondent personally, arising out of the wrong to which the mandate itself is directed, perforce the adversary must submit; so that a cause of action at law becomes summarily justiciable without a jury, notwithstanding the fact that as to such causes of action both parties are entitled to a jury and cannot be compelled to submit to a summary adjudication. (U. S. Const., 7th Amendment; *Basey* v. *Gallagher,* 20 Wall. (U. S.) 670, 22 L. Ed. 452, 1 Morr. Min. Rep. 683; Const. Mont., Art. III, sec. 23; *Chessman* v. *Hale,* 31 Mont. 577, 581 *et seq.,* 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254.) But the statute clears itself of any such absurdity. It says, the applicant, if he prevail, may have "the damages he has sustained" as found by the jury, *etc.* Sustained by what? Surely, by those circumstances upon which a jury may, but need not be, called to pronounce. These are questions of fact raised by the answer, "essential to the determination of the motion and affecting the substantial rights of the parties, and upon the supposed truth of the allegation of

which the application for the writ is based." (Sec. 7219.) How is the question of what damages the applicant may have suffered from official inaction essential to the determination of whether the writ shall go to compel official action? Or how is the question of what damages the applicant may have sustained by reason of preclusion from office essential to determine whether he shall be restored? It seems to be the rule even under the civil action theory of *mandamus* that damages cannot be awarded unless the peremptory writ is issued (*Brown* v. *Worthen,* 63 Kan. 883, 65 Pac. 255) ; and it is settled in this state that the peremptory writ cannot issue after the term of the officer involved has expired (*State ex rel. Stranahan* v. *Board,* 32 Mont. 13, 4 Ann. Cas. 73, 79 Pac. 402) ; what, in such a case, becomes of the relator's right to damages for the original wrong if they are necessarily triable in the *mandamus* proceedings?

The foregoing, and other considerations, as we think, justify our opinion that section 7224 is not to be interpreted as contended by the respondent; but rather that the damages therein provided to be allowed in *mandamus* proceedings are such damages as are incidental to the proceedings themselves, and not those arising out of the prior preclusion or deprivation which the writ itself was invoked in part to redress. This brings us within, not the letter, but the spirit of the decision in *Peterson* v. *City of Butte,* 44 Mont. 401, Ann. Cas. 1913B, 538, 120 Pac. 483, and to our final conclusion upon this branch of the case: That the plaintiff is not precluded from maintaining this action by the litigation of the *mandamus* proceedings referred to in the answer.

2. We are constrained, however, to agree with the contention of respondent that the evidence presented to the trial court was insufficient to sustain the action as laid. The complaint alleges "that by, through and because of the hereinbefore stated unlawful, wrongful, oppressive and malicious acts and conduct of said defendant, plaintiff has been and still is deprived of said emoluments and compensation," to his damage, *etc.* The "unlawful, wrongful, oppressive and malicious acts and con-

duct" above referred to are the dismissal and preclusion of the plaintiff and his associates from their offices as policemen. No other damages are claimed, no other cause of damage is alleged; so that the burden of the charge is that the plaintiff and his associates were damaged by the loss of their salary in consequence of their unlawful dismissal and preclusion, and not otherwise. What causal connection there was between their dismissal and preclusion on the one hand, and the loss of salary on the other, is not further revealed.

At the close of appellant's case the state of the proof as regards any causal connection between the respondent's acts and the damages claimed was this: Bailey and his associates had been kept out of their offices from June 1, 1908, to February 10, 1910, as the result of orders of the respondent under an ordinance judicially held to be void; during that time they drew no pay; upon their restoration they presented, in due form, to the mayor and city council their verified claims for the accrued salary, and these claims, for some reason, not made to appear, were rejected. There was an offer of proof that the city had exceeded the constitutional limit of indebtedness, but this was rejected, and properly so, for lack of an allegation in the pleadings.

The various decisions of this court relative to the status of the plaintiff and his associates establish that their dismissal and preclusion from office were without legal effect. (*State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940; *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695; *State ex rel. Bailey* v. *Edwards,* 40 Mont. 313, 106 Pac. 703; *State ex rel. Edwards* v. *District Court,* 41 Mont. 369, 109 Pac. 434.) In contemplation of law, therefore, they were never dismissed, but were, during the entire period of their unlawful preclusion, police officers of the city, entitled to be paid as such, and, upon making good their claim to the office, in position to assert their right as against the city to the salary accrued. (*Peterson* v. *City of Butte,* 44 Mont. 401, Ann. Cas. 1913B, 538, 120 Pac. 483; *Wynne* v. *City of Butte,* 45 Mont. 417, 123 Pac. 531.)

So far as we can tell, the failure of appellant and his associates to receive their pay may have been due to circumstances wholly unconnected with the acts of respondent complained of; for there is absolutely nothing before us to show that the city could not have been made to respond or that it cannot now be made to respond; and if it should be made to respond, no emoluments will have been lost and therefore no damages suffered of the character alleged.

"But it does not lie in the mouth of defendant to say that another person—Helena—is liable for the salaries"; so say appellant's counsel, and *Lumley* v. *Gye,* 2 El. & Bl. 216, is cited in support of this position. That case, which was for damages directly due to the malicious act of Gye in procuring an opera singer to abandon her contract with Lumley, was decided upon principles wholly foreign to the case at bar; and without indicating whether we should, under appropriate circumstances, care to follow it, we note in the opinion of Compton, J., this language: "The damages occasioned by such malicious injury might be calculated upon a very different principle from the amount of the debt which might be the only sum recoverable on the contract. * * * The servant or contractor may be utterly unable to pay anything like the amount of the damage sustained entirely from the wrongful act of the defendant." In the case at bar damage might have been claimed upon a different basis and therefore calculated upon a different principle and upon the amount of the unpaid salary; but it was not. The city of Helena may be utterly unable to pay the salary arrears, and the damage sustained by appellant may be due entirely to the wrongful act of respondent; but, if so, these facts have not been made to appear. This being true, there was a lack of proof; and for this reason the judgment must be affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

ON REHEARING.

(Submitted June 11, 1913.   Decided July 7, 1913.)

MR. JUSTICE SANNER delivered the opinion of the court.

After a careful consideration of the propositions submitted on rehearing by counsel for appellant, we are convinced that the result reached in the opinion heretofore announced is the right one.   Much contention is based upon the use in the opinion of the following language: "There was an offer of proof that the city had exceeded the constitutional limit of indebtedness, but this was rejected, and properly so, for lack of an allegation in the pleadings."   This statement is not literally correct.   The trial court did reject the evidence referred to in the first instance for the reason stated, but later caused the record to show that evidence had been received of the fact that the indebtedness of the city was beyond the constitutional limit.   However, the remark quoted was made merely in passing.   The presence in the record of the fact referred to is not decisive of this appeal.   The record still falls short of establishing a causal connection between the unlawful preclusion alleged, and the loss of emoluments.   It still fails to show by competent evidence how the utterly void act of Edwards could produce the result complained of or that the city could not have been made to pay the salaries of appellant and his associates as they accrued.   We do not feel that the judgment-roll in the *mandamus* suits presented in evidence can be considered for any purpose, save that for which they were pleaded, to-wit: that there was adjudicated therein the right of appellant and his associates to the offices in question.

Judgment affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.